##### IN THE

## SUPERIOR COURT OF JUDICATURE.

##### FOR THE

## COUNTY OF ROCKINGHAM, AUGUST TERM,

## A. D. 1830.

---

### THOMAS MARSTON *versus* JOHN NORTON.

A married woman cannot make a will of lands, neither with, nor without, the assent of her husband.

THIS was an appeal from a decree of the judge of probate in this county, made on the 11th June, 1828, allowing and approving, in solemn form, a certain instrument, as the last will and testament of Esther Norton. It was agreed by the parties, that the said instrument, which purported to contain a devise by the said Esther of all her real estate to W. Norton, her husband, for life, and after the decease of her husband, to John Norton, in fee, and to appoint John Norton executor, was duly made, executed, witnessed, and published by the said Esther, as her last will and testament ; that at the time of making and publishing the same, the said Esther was of sound mind, and was the wife of the said W. Norton ; and at the time the said instrument was executed, and in presence of the same witnesses, the said W. Norton

*Marston*
*v.*
*Norton.*

made, signed and sealed, a memorandum, under the said instrument, as follows :—

" I, the said William Norton, husband of the said Esther Norton, do consent and agree, that my wife, Esther Norton, should dispose of her real estate according to the above will."

Thomas Marston, the appellant, is one of the heirs at law of the said Esther. The reason assigned for this appeal was, that the said Esther was, at the time of executing and publishing said instrument, a *feme covert ;* and the question was, whether the decree must be reversed for that cause ?

*Tilton,* for the appellant.

A married woman cannot make a will of land. 12 Mass. Rep. 525, *Osgood* v. *Breed ;* Lovelass, 144, Godol. Orphan's Legacy, 29.

She can make a will of land, neither with, nor without, her husband's consent. Shepherd's T. 402.

If the person, whose will is offered for probate, was under a legal incapacity to make a will, when the instrument was published, it cannot be proved and allowed as a will. The probate of a will is conclusive as to real and personal estate ; and if a will be proved and allowed, the capacity of the testator or testatrix cannot afterwards be questioned. 12 Mass. Rep. 531 ; 16 ditto, 433, *Dublin* v. *Chadbourn ;* 1 Pick. 549.

*Mason,* jr., for the appellee.

The question is, whether a *feme covert* can, with the assent of her husband, make a valid devise of her real estate?

It seems, that among the Anglo-Saxons, no distinction was made between real and personal property, and that both were devisable. 1 Reeves' Hist. 11.

By the Anglo-Saxon laws, married women might, with the assent of their husbands, devise their lands. 3 Turner's Hist. Anglo-Sax. 73.

The Norman conquest introduced feuds, by which lands became unalienable either by devise or otherwise.

And Glanville, who lived in the reign of Henry II., states, that in his time no person could devise lands without the consent of the heir. Beame's Glanville, 140.

The wife was entitled to a certain *rationabilis pars*, as it was termed, or third part of the effects of the husband, if she survived him. Glanville, 163.

And it seems not to have been uncommon for the husband to give her this third during his life time. Glanville, 163 ; 1 Reeves' Hist. 111.

This "*rationabilis pars*," it is said by Bracton, the wife might give by will, as well as her robes and jewels. Bracton, 60.

Bracton says, generally, that a married woman could not make a valid will without her husband's consent. Bracton, 60. It would seem then, that she had this power with his consent.

It appears, then, that such property as a *feme covert* could possess, she might dispose of by will.

It was held by the civilians, that a *feme covert* might make a will. Such is the doctrine of the civil law, which regulated testamentary matters. 1 Bro. Civil Law, 298 ; 4 Reeves' Hist. 68. 4 Burns' Eccl. Law, 47.

Before the reign of Henry VIII., uses had become common, by means of which the profits of land might be disposed of, but not the land itself. The use was considered as a chattel interest, and as such might be devised. 1 Sander's Uses, 80. Uses being an invention of the civilians, it seems highly probable that a *feme covert* might devise to uses.

Afterwards uses became a great source of complaint with Henry VIII., because they deprived him of his feudal fines and rights, which occasioned the statute of uses, 27, H. VIII., by which the use was executed in the *cestui que* use, the restraints in alienation restored, and the rights of devise, which had become common by means of uses, taken away.

But so great was the inconvenience produced by this,

that the statute of wills, 32 H. VIII., was passed, which provided, " that every person, having any manors, lands, tenements, or hereditaments holden in socage, or of the nature of socage tenure, shall have full and free liberty, power and authority, to give, dispose, will and devise, as well by his last will and testament in writing as otherwise." 4 Burns' Eccl. Law, 59. A *feme covert* is clearly included in the words of this statute.

By a constitution of archbishop Stafford, it is ordained, that " whereas divers persons do hinder, or endeavor to hinder, the free making and execution of the testaments of women, either sole or married, we decree that none henceforth shall do the same." 4 Burns' Eccl. Law, 47.

Two years after the making of this constitution, we find a petition of the commons in Parliament, that whereas there was a constitution made by the prelates, that women married might make a will, it might be ordained that the people should remain in the same state as they had been accustomed to be, in the time of the king's progenitors. 4 Burns', 47.

And by the statute of 34 H. VIII., it is enacted, that wills or testaments made of any manors, lands, tenements or hereditaments, by any woman covert, shall not be taken to be good or effectual in law. It would seem, then, that a *feme covert* was not disabled from devising by the statute of wills.

Are they disabled by our statute, which is in these words ? " Every person lawfully seized and possessed of any real estate in this State, of the age of twenty-one years and upwards, and of sane mind, shall have power to give, devise, and dispose of the same, by a will in writing."

This statute contains certain limitations and exceptions, but it does not except a *feme covert.* It ought, therefore, to be construed to give them the power.

The universal practice in this State, so long recognized by our courts, by which a *feme covert* may join with her husband in a conveyance of her land by deed, would

seem to indicate plainly the sense of the legislature in omitting the disabling clause of the statute of H. VIII., to give to married women this power of devising.

The popular understanding of the intent of the statute, is also shown by the fact, that wills of married women devising real estate, are found upon the files of the probate courts.

The will, in this case, was drawn and witnessed by one judge of probate, and allowed by another.

Do any reasons of policy apply, why a *feme covert* should not possess this power ?

If it be reasonable that she should have power to convey her lands by joining with her husband in a deed, it seems to be equally reasonable that she should have power, with his consent, to devise them. A devise has the advantage that it is revocable.

" All persons generally," says Comyns, " who may grant, may devise." Com. Dig. " Devise," G.

But by the statute of 34 and 35, H. VIII., married women cannot devise lands. Com. Dig. " Devise," H.

This is an authority to show, that originally, at common law, a *feme covert* might devise, and was only disabled by the statute of H. VIII.

It is said by Comyns, that if a *feme covert* devises by will, and the husband assents to it after her death, it will be good. Com. Dig. " Devise," H.; Rolle's Ab. 608.

The argument derived from the coercion of the husband, is equally applicable to her conveyance with him by deed, which has never been supposed to create any inconvenience.

It is said, that if a man makes a will in his sickness, by the over importunity of his wife, to the end that she may be quiet, this shall be said to be a will made by restraint, and shall not be good. Gilbert, Dev. 13. If this be law, doubtless the same would hold with respect to a *feme covert*. We are aware, that, in some of the states, it is held that a *feme covert* cannot devise lands. But the decision

of the question has turned upon the peculiar phraseology of the statutes of those states.

Thus in the statute of Massachusetts, the person devising must be seized in his or her own right. The word seizin, in all the statutes of Massachusetts, is equivalent to ownership. 4 Mason's Rep. 489.

A *feme covert* may, in this sense, be seized of the inheritance, why then may she not devise it ?

RICHARDSON, C. J. The question in this case is, whether a married woman can, with the consent of her husband, dispose of her real estate by a will ?

In ancient times, no lands or tenements were, by the common law of England, devisable by the last will of any person, except in particular places, by custom. Coke Litt. 111, *b*, and note 1 ; Litt. sec. 167 ; Wright's Tenures, 171—173 ; 6 Coke 17, *Wild's Case* ; Cowper, 305.

And by the common law, as it was understood in the reign of Henry the second, a man's goods were not wholly at his own disposal by will, but his wife and children had an interest in them, of which he could not deprive them by a will. The shares of the wife and children were called their " *rationabilis pars*," and the writ *de rationabili parte bonorum*, was given to enforce the claim. 2 Bl. Com. 491 ; Fitz H. N. B. 284 ; Coke Litt. 176, *b*.

It seems to have been settled in very ancient times, that a married woman might, with the assent of her husband, dispose of her chattels by will. Bracton, 60 ; Moore, 339, *Finch* v. *Finch* ; Cro. Car. 106, *Johns* v. *Rowe* ; Lovelass, 143—146.

But by the common law, a *feme covert* never could make a valid devise of land with or without her husband's consent, to any person whatever. Godol. 301 ; Shep. T. 402 ; Com. Dig. " Devise" H. 3 ; Lovelass, 96 ; 3 Johns. C. Rep. 523, *Bradish* v. *Gibbs* ; 4 Mason, 443, *Picquet* v. *Swan.*

She was considered to be so entirely under the power of the husband, that she could, in no case, make, what

in propriety of speech is called, a will. 4. Burns Eccl. Laws, 49 ; Powell on Devises, 97.

By the statute of 32 H. VIII. ch. 1, it was enacted, "that all and every person and persons, having a sole estate or interest in fee simple, or seized in fee simple, in coparcenary, or in common of any manors, lands, &c. shall have power to give, dispose, will, and devise by will, in writing or otherwise, by act executed in his life time all his said manors, &c.

The language of this statute was broad enough to include all persons. But it seems to have been thought by the courts of the common law, that, upon the construction of statutes, not the mere letter but the internal meaning and sense of the legislature was to be considered, and although this statute gave power to every person having land to devise it, yet it was thought that it could not have been the intention of the makers of the statute, that persons who were disabled by the common law to dispose of their lands by other consequences, should have the power to devise it ; therefore, in expounding that statute, a married woman was considered as not comprehended under these general words. Powell on Devises, 93—95.

And as soon as an attempt was made in the ecclesiastical courts to establish the wills of married women, it was enacted by Parliament, that wills of lands by married women should not be taken to be good in law. 4 Burns, 46.

In Massachusetts, by a statute passed in 1692, it was enacted, " that every person lawfully seized of any lands &c. in his own proper right in fee simple, shall have power to give, dispose and devise, as well by his last will and testament in writing, as otherwise by any act executed in his life, all such lands, &c. Prov. and Col. Laws, 230. And the statute of 1783, cap. 24, contains a provision substantially in the same language. In the case of *Osgood* v. *Breed*, to which we have been referred by counsel, it was decided, by the supreme court of Massachusetts, that married women have not power under

their statute to make a will of lands, even with the consent of their husbands.

Our provincial act of the 4 Geo. 1, cap. 73, was copied verbatim, from the said statute of Massachusetts passed in 1692. Prov. Laws, 104.

The statute of February 3, 1789, enacted " that every person lawfully seized and possessed of any estate in lands, &c., of the age of twenty-one years and upwards, and of sane mind, shall have power to give, devise, and dispose of the same, as well by his last will and testament in writing, as by any other act duly executed, &c.

The statute of July 2, 1822, contains a provision on this subject, substantially the same as the said provision in the statute of February 3, 1789.

It thus appears, that the provisions on this subject in the statutes of England and of Massachusetts, are almost precisely the same as in our statutes, and we are of opinion, that the construction upon these provisions in relation to married women in England and Massachusetts, are entirely correct. A married woman is not, by the common law, *sui juris*, but is *sub potestate viri*.

She is under a civil disqualification arising from want of free agency, and not from want of judgment, and it seems to us to be wholly incredible, that the legislature should have intended to give to a married woman the power of devising her lands, at her decease, while the power of disposing of them at her will is denied to her during her life. Her will of chattels may be made valid by the assent of her husband, because the gift is, in effect, his gift, and the property passes from him. But with respect to her real estate the case is different. Her lands at her decease go not to him, but to her heirs, and his assent to her will of real estate can give it no validity.

*Decree of the court below reversed.*